# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 9, 2012

## STATE OF TENNESSEE v. KRISTOPHER LEE COLBERT

**Appeal from the Circuit Court for Montgomery County**
**No. 41100338   John H. Gasaway, Judge**

_____

### No.  M2012-00225-CCA-R3-CD - Filed November 9, 2012

_____

Appellant, Kristopher Colbert, was indicted by the Montgomery County Grand Jury in April of 2011 for driving under the influence, driving under the influence per se, reckless endangerment, vehicular assault, and aggravated assault.  Appellant pled guilty to two counts of vehicular assault in exchange for dismissal of the remaining counts of the indictment. After a sentencing hearing, the trial court sentenced Appellant to four years for each offense, to be served consecutively as a Range I, standard offender.  Appellant filed a motion to reconsider and a motion to reduce sentence under Tennessee Rule of Criminal Procedure 35 and/or Tennessee code Annotated section 40-35-212(d).  After a hearing, the trial court denied the motions.  Appellant initiated this appeal to determine whether the trial court improperly denied the motion to reduce the sentence.  After a review of the record, we conclude that the trial court did not abuse its discretion in denying the motion. Consequently, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Roger E. Nell, District Public Defender, Clarksville, Tennessee, for the appellant, Kristopher Lee Colbert.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; John W. Carney, District Attorney General; and Chris Dotson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

In April of 2011, Appellant was indicted by the Montgomery County Grand Jury for one count of driving under the influence, one count of driving under the influence per se, one count of reckless endangerment, one count of vehicular assault, and one count of aggravated assault. Prior to trial, Appellant agreed to plead guilty to two counts of vehicular assault in exchange for an amendment to the indictment and the dismissal of the remaining counts of the indictment. The indictment in Count 4 for vehicular assault was amended by striking the words "knowingly," "drugs or other," and "and to Emily Mills" from the indictment. Count 5 was amended from aggravated assault to vehicular assault.

At the plea acceptance hearing, the prosecutor stated that, had the case gone to trial, the State would have put on proof that the following occurred:

> On or about the date alleged in the charging instrument, [Appellant] was apparently drinking around the company of some acquaintances. Based on the information we have, the evidence to present to the jury, some of his friends tried to keep him from the car keys; he ended up taking his car keys and driving out on the roadways in what they felt to be an unsafe and impaired state. His friend or friends followed [Appellant] at a high rate of speed; [Appellant] failed to obey at least one traffic control signal and eventually drove on the wrong side of the road striking head-on a vehicle operated and occupied by the victims in this case.
>
> As a consequence of that crash, the driver of the vehicle suffered a fractured bone or bones; the five-year-old occupant suffered a broken back and other injuries, which she continues to have to this date. [Appellant] did provide blood during the investigation; his blood result was a point one six.

The trial court accepted the guilty plea. There was a separate sentencing hearing. The trial court received a presentence report that revealed Appellant's prior criminal history. Appellant had prior convictions for domestic violence, a traffic offense, two violations of the open container law, and a charge for driving under the influence that was reduced to a reckless driving conviction.

Appellant described a difficult childhood, being raised by his grandparents from the age of twelve. Appellant joined the Army Reserves at the age of eighteen and, at the time of the presentence report, was still active in the military as a Military Occupational Specialist

Combat Engineer with the rank of E4. Appellant worked at WalMart in Sango, Tennessee for about one month prior to resigning. Appellant also held jobs at All Tech Insulation and Clarksville Insulation prior to his arrest.

At the hearing, Tamela Rudd testified that she went with her husband and Appellant to the Bottoms Up bar on the day of the accident. Mrs. Rudd's husband drove them to the bar, and they stayed for about three hours. Appellant drank alcohol while at the bar before deciding to leave. Mrs. Rudd told Appellant he did not need to drive; he informed her that someone was coming to pick him up at the bar. Mrs. Rudd walked Appellant outside to meet his ride. She described Appellant as "not very well" at that point, stating that she had to put her arm around Appellant to help him out of the bar. He seemed drunk. Appellant got into a truck with two men, Patrick Montgomery and Charles Harper, and left the bar.

Mr. Montgomery and Mr. Harper worked with Appellant at Wal-Mart the night prior to the incident from 9:00 p.m. to 6:00 a.m. From work, the three men went to Appellant's house and played games. Appellant drank approximately one beer. Appellant told the men that he was probably going out to a bar. Mr. Harper and Mr. Montgomery left Appellant's house. Appellant called them around 8:00 or 9:00 p.m. that night and asked them to pick him up from the Bottoms Up bar. Appellant was drunk when they picked him up at the bar. He got into the back seat of the truck. Appellant wanted to go to Mrs. Rudd's house to get the keys to his truck.

When they arrived at Mrs. Rudd's house, Appellant went inside to get his keys. Mr. Harper and Mr. Montgomery instructed Appellant to hand over his keys because he was in no condition to drive. Appellant told the men he would give them the keys after he went to his truck to get cigarettes. Appellant walked to his truck and locked himself inside. Both Mr. Montgomery and Mr. Harper begged Appellant to get out of the truck. Finally, they decided to let Appellant drive while they followed him in their truck.

Appellant drove slowly for about five minutes and then sped up, going what Mr. Montgomery described as at least one hundred miles per hour. Appellant was driving a little to the left of the center line. About five minutes later, Appellant hit an oncoming car head-on. The tail ends of both vehicles lifted, spun around, and stopped. Mr. Montgomery and Mr. Harper stopped at the scene.

Wayne Perry and his wife did not witness the accident but stopped to render assistance shortly after the accident occurred. Appellant did not speak. Mr. Perry smelled alcohol on Appellant's person. Mr. Perry checked on Brittany Rutherford and Emily Mills, the victims in the other vehicle. Ms. Mills, a six-year-old, was pulled out of the back of the vehicle. Ms. Rutherford was still behind the driver's seat.

Ms. Rutherford was driving her niece home on the night of the accident. Ms. Mills was asleep in the back seat. Ms. Rutherford saw Appellant's truck swerve to the right before crossing the center lane and hitting her car head-on. She only remembered gripping the steering wheel and thinking that it was going to hurt.

Both Ms. Rutherford and Ms. Mills were injured in the crash. Ms. Rutherford suffered from two broken ankles and a broken clavicle. She also had "air pockets" in her lungs. Ms. Mills, on the other hand, was taken via life flight to Vanderbilt. Ms. Mills could not breathe on her own for about two weeks and had a two-inch gash in her trachea, a tear in her colon, and permanent damage to the T-1 area of her spinal cord. One year after the crash, Ms. Mills had to be catheterized four times a day; had to be given suppositories; had recurrent urinary tract infections; had to take breathing treatments because the lower portion of her lungs did not function; and was only able to get around in a wheel chair. Ms. Mills has approximately a two percent chance of walking again in her lifetime.

Appellant testified at the sentencing hearing. He stated that he was "stinking drunk" and had no excuse for his behavior because he was "careless." Appellant admitted that he caused the wreck when he blacked out at the wheel while his blood alcohol level was .16. Appellant expressed extreme remorse about the accident and acknowledged that he wrote a letter to the victims of the crash. Appellant admitted that he needed to be punished.

At the conclusion of the hearing, the trial court applied several enhancement factors from Tennessee Code Annotated section 40-35-114: (1) Appellant has a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range; (4) Ms. Mills was a particularly vulnerable victim because of her age; and (6) the personal injuries inflicted upon the victim were particularly great. T.C.A. § 40-35-114(1), (4), and (6). The trial court also applied one mitigating factor, based on Appellant's genuine remorse. T.C.A. § 40-35-113(13). The trial court commented that a lack of confinement would depreciate the seriousness of the offense and that confinement was necessary to provide an effective deterrent to other people that drink and drive. As a result, the trial court sentenced Appellant to four years on each offence. The trial court ordered the sentences to be served consecutively under Tennessee Code Annotated section 40-35-115(b)(4), using Appellant's prior reckless driving conviction to find Appellant to be a dangerous offender whose behavior showed little or no regard for human life, and no hesitation about committing a crime in which the risk of human life was high.

Appellant filed a motion to reconsider the sentence based on statistical compilations of sentences in other cases. The trial court denied the motion. Appellant sought a timely appeal. On appeal, he insists that the trial court erred by sentencing him to the maximum sentence in the range and erred by denying an alternative sentence.

*Analysis*

On appeal, Appellant appeals from the denial of his motion filed under Rule 35 of the Tennessee Rules of Criminal Procedure to modify or reduce his sentence of eight years in incarceration.[1]   Specifically, he argues that the trial court: (1) improperly applied enhancement factors (4) and (6); (2) improperly determined that Appellant was a dangerous offender; (3) failed to consider statistical information from the administrative office of the courts; (4) improperly denied an alternative sentence; and (5) imposed an excessive sentence. The State disagrees, insisting that the trial court properly sentenced Appellant to consecutive, four-year sentences.

Rule 35 of the Tennessee Rules of Criminal Procedure provides:

(a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.

(b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.

(c) Hearing Unnecessary. The trial court may deny a motion for reduction of sentence under this rule without a hearing.

Tenn. R. Crim. P. 35(a)-(c). " This rule does not vest the defendant with a remedy as of right." *State v. Elvin Williams*, No. M2006-00287-CCA-R3-CO, 2007 WL 551289, at *1 (Tenn. Crim. App., at Nashville, Feb. 27, 2007). The Advisory Commission Comments to Rule 35 state, "The intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice. The modification permitted by this rule is any modification otherwise permitted by the law when the judge originally imposed [the] sentence." When the appellate court reviews the denial of relief on a motion to reduce or modify a sentence, the standard is whether the trial court abused its discretion. *State v. Irick*, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993).

---

[1]Appellant initially filed a notice of appeal of the denial of a motion to reconsider. He later sought a modification of his sentence under Tennessee Rule of Criminal Procedure 35 and Tennessee Code Annotated section 40-35-212(d)(1). The trial court denied those motions as well and Appellant filed a separate notice of appeal. This Court consolidated the appeals by order on April 27, 2012.

The arguments Appellant advances on appeal do not focus on the abuse of discretion by the trial court in denying the motion; they relate rather to the trial court's allegedly improper sentencing at the sentencing hearing including the court's alleged failure to consider the statistical information provided by the administrative office of the courts and court's determination of his status as a dangerous offender. Appellant contends that his sentences, both the length and the manner of service, were "grossly and unjustifiably disproportionate" when reviewing the statistical information provided and that he was not a truly a dangerous offender in need of consecutive sentencing. After a review, we conclude that the trial court followed proper sentencing procedures. Appellant's sentence is in the range of punishment provided for his offenses and the sentence appears to be consistent with applicable sentencing principles and guidelines. Therefore, this Court must affirm the sentence. *See*, *State v. Susan Renee Bise*, No. E2011-00005-SC-R11-CD, ___S.W.3d ___, 2012 WL 4380564 (Tenn. Sept. 26, 2012). Moreover, nothing appears in the record to persuade us the trial court abused his discretion in declining to reduce the sentence under Tenn. R. Crim. P. 35.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE

-6-